In the

# United States Court of Appeals

## For the Seventh Circuit

No. 23-2489

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ALVIN BEASLEY,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Central District of Illinois
No. 20-cr-20009 — **Colin S. Bruce**, *Judge.*

ARGUED NOVEMBER 3, 2025 — DECIDED DECEMBER 19, 2025

Before ST. EVE, JACKSON-AKIWUMI, and MALDONADO,
*Circuit Judges.*

ST. EVE, *Circuit Judge.* A jury convicted Alvin Beasley under 18 U.S.C. § 922(g)(1) of possessing a firearm as a convicted felon after he shot a gun at his ex-girlfriend's house while on parole for a felony conviction. The district court, finding Beasley had three prior convictions for violent crimes, sentenced Beasley under the Armed Career Criminal Act

("ACCA"), 18 U.S.C. § 924(e), which imposes a fifteen-year mandatory minimum.

Beasley argues his sentence violates his Fifth and Sixth Amendment rights because a jury rather than a judge should have made the fact-intensive determination of whether his prior convictions occurred on "different occasions" under ACCA. While Beasley's appeal was pending, the Supreme Court held in *Erlinger v. United States*, 602 U.S. 821, 835 (2024), that the Fifth and Sixth Amendments require a jury to decide whether previous offenses occurred on occasions different from one another under ACCA. We agree with Beasley that the sentencing court erred under *Erlinger* by declining to send the different-occasions question to the jury but nevertheless affirm because the error was harmless.

## I. Background

On May 23, 2019, police responded to a "shots fired" call at the home of Alvin Beasley's ex-girlfriend in Danville, Illinois. At the scene, police observed two bullet holes on the outside of the ex-girlfriend's home and learned that a witness saw a red Chevrolet Impala driving away immediately after the gunshots sounded. As the police tracked down and tailed the Impala, they saw someone toss a firearm out of its passenger side. The officers conducted a traffic stop of the vehicle and found Beasley sitting in the driver's seat. Beasley, a convicted felon, could not lawfully possess a firearm.

A grand jury indicted Beasley, charging him with being a felon in possession of a firearm in violation of § 922(g)(1). The case went to trial in September 2021, and the jury returned a verdict of guilty on the sole count of the indictment.

In preparation for Beasley's sentencing, probation prepared a presentence investigation report ("PSR") highlighting three of Beasley's prior felony convictions: an armed robbery committed on March 21, 2004; an aggravated battery on June 11, 2005; and a second-degree murder on December 23, 2011. Based on the PSR, probation determined Beasley qualified as an armed career criminal and faced a mandatory minimum term of fifteen years and up to life in prison under ACCA, § 924(e). The Sentencing Guidelines recommended a sentence between 262 and 327 months in prison.

In a presentencing memorandum, Beasley acknowledged the prior convictions and conceded two of the offenses occurred over a year apart, on March 21, 2004, and June 11, 2005. During a colloquy at his sentencing hearing, Beasley confirmed the 2004 and 2005 offense dates and further conceded that the third offense occurred on December 23, 2011. Still, Beasley objected to probation's recommended mandatory minimum sentence under ACCA. He argued that the Supreme Court's decision in *Wooden v. United States*, 595 U.S. 360 (2022), requires extensive factfinding regarding whether prior convictions occurred on occasions different from one another and, pursuant to *Alleyne v. United States*, 570 U.S. 99 (2013), and *Apprendi v. New Jersey*, 530 U.S. 466 (2000), it falls within the province of the jury, not the court, to determine whether his prior convictions trigger ACCA's longer prison terms. The district court overruled Beasley's objection at sentencing based on our court's then-controlling precedent in *United States v. Hatley*, 61 F.4th 536 (7th Cir. 2023), explaining "separate occasions of prior offenses do not need to be alleged in the indictment and found beyond a reasonable doubt by the jury." The judge determined the three predicate offenses

occurred on different occasions and sentenced Beasley to 300 months' imprisonment and five years' supervised release.

Beasley appealed his sentence. While his appeal was pending, the Supreme Court handed down its decision in *Erlinger*, which held that the Fifth and Sixth Amendments require ACCA's different-occasions element to be submitted to the jury. 602 U.S. at 835.

## II. Discussion

ACCA imposes a mandatory minimum sentence of fifteen years' imprisonment for a defendant convicted under § 922(g)(1) who also has three previous convictions for violent felonies "committed on occasions different from one another." § 924(e)(1). This sentence enhancement also increases the maximum statutory sentence from ten years under § 922(g) to life in prison under the enhancement.

Under *Apprendi* and *Alleyne*, the government must prove to a jury beyond a reasonable doubt any sentencing factor—other than the fact of a prior conviction—that increases a defendant's maximum or minimum penalty. *Apprendi*, 530 U.S. at 490; *Alleyne*, 570 U.S. at 111–13. ACCA's different-occasions factor increases both the minimum and maximum penalties facing defendants sentenced under that statute. And because the different-occasions determination is an "intensely factual" question requiring "examination of a 'range' of facts," the inquiry goes beyond finding the fact of a prior conviction. *Erlinger*, 602 U.S. at 828 (citing *Wooden*, 595 U.S. at 369). Thus, building on *Wooden* in the context of *Apprendi* and *Alleyne*, the Court in *Erlinger* held the Fifth and Sixth Amendments require a unanimous jury—not a court—to resolve the different-occasions question beyond a reasonable doubt. *Id.*

The government concedes that the district court erred under *Erlinger*. We agree. The sentencing court, not the jury, found that Beasley committed the three prior violent crimes on different occasions. The different-occasions question was neither charged in the indictment nor submitted to the jury. And the different-occasions finding increased both the minimum and maximum penalties beyond what the jury's verdict authorized. The firmly entrenched principles from *Apprendi* and *Alleyne*, plus the newly articulated standard from *Erlinger*, expressly prohibit this. No one disputes an error occurred, nor could they.

At issue, then, is (1) whether we review the district court's error as a harmless error or a structural error and (2) if harmless error review applies, whether the error was harmless in this case.

## A. Standard of Review for *Erlinger* Errors

A preserved trial error is subject to harmless error analysis unless it is a structural error necessitating automatic reversal. *Washington v. Recuenco*, 548 U.S. 212, 218–19 (2006). We reject Beasley's suggestion that his *Erlinger* error is structural. Instead, we review the error for harmlessness, as every federal circuit to address the issue has done.

The Supreme Court has "repeatedly recognized that the commission of a constitutional error at trial alone does not entitle a defendant to automatic reversal." *Recuenco*, 548 U.S. at 218; *Neder v. United States*, 527 U.S. 1, 8 (1999); *see also Arizona v. Fulminante*, 499 U.S. 279, 306 (1991); *Chapman v. California*, 386 U.S. 18, 22 (1967). Rather, "most constitutional errors can be harmless." *Neder*, 527 U.S. at 8 (quoting *Fulminante*, 499 U.S. at 306). "[I]f the defendant had counsel and was tried by

an impartial adjudicator, there is a strong presumption that any other [constitutional] errors that may have occurred are subject to harmless-error analysis." *Id.* (quoting *Rose v. Clark*, 478 U.S. 570, 579 (1986)).

Structural errors are "not subject to harmless-error analysis because [they] 'vitiate[] *all* the jury's findings.'" *Neder*, 527 U.S. at 11 (quoting *Sullivan v. Louisiana*, 508 U.S. 275, 281 (1993)). Only in a "very limited class of cases" has the Court found structural errors requiring automatic reversal. *Johnson v. United States*, 520 U.S. 461, 468 (1997) (citing *Gideon v. Wainwright*, 372 U.S. 335 (1963) (complete denial of counsel); *Tumey v. Ohio*, 273 U.S. 510 (1927) (biased trial judge); *Vasquez v. Hillery*, 474 U.S. 254 (1986) (racial discrimination in selection of grand jury); *McKaskle v. Wiggins*, 465 U.S. 168 (1984) (denial of self-representation at trial); *Waller v. Georgia*, 467 U.S. 39 (1984) (denial of public trial); *Sullivan*, 508 U.S. 275 (defective reasonable-doubt instruction in death penalty case)).

In contrast, "[e]rrors that 'infringe upon the jury's factfinding role' are 'subject to harmless-error analysis.'" *United States v. Johnson*, 114 F.4th 913, 917 (7th Cir. 2024) (quoting *Neder*, 527 U.S. at 18). Specifically, a district court's "[f]ailure to submit a sentencing factor to the jury . . . is not structural error" and a court should review it for harmlessness. *Recuenco*, 548 U.S. at 222. Unlike the structural errors identified above, the failure to submit a sentencing factor to the jury does not "vitiate" the jury's entire verdict; it impacts only the jury's ability to make a finding on one discrete issue, leaving the jury's verdict on the defendant's substantive offenses entirely intact. *Neder*, 527 U.S. at 11. Our court has consistently followed *Recuenco*'s precedent, applying harmless error review where the district court failed to submit a sentencing factor to the

jury. *See, e.g.*, *United States v. Williams*, 493 F.3d 763, 765 (7th Cir. 2007); *United States v. Hollingsworth*, 495 F.3d 795, 806 (7th Cir. 2007).

Beasley's case is nearly indistinguishable from *Recuenco*, and the same result follows. Here, as there, the district court imposed a sentence enhancement based on factual findings not submitted to the jury. Under *Recuenco*'s clear holding, the district court's failure to submit the ACCA different-occasions sentencing factor to the jury does not vitiate the jury's entire holding and accordingly is subject to harmless error review.

Beasley fails to engage with the substantial precedent holding harmless-error review applies to *Apprendi*-like errors, seeming to suggest *Erlinger* errors are distinguishable. But that the error here arose under *Erlinger* rather than *Apprendi* or *Alleyne* makes no difference to our analysis. *Erlinger*, by its own description, is a straightforward application of the rule from *Apprendi* and *Alleyne* that a jury must find all facts that increase a defendant's statutory penalties. 602 U.S. at 835 ("[*Erlinger*] is as nearly on all fours with *Apprendi* and *Alleyne* as any [case] we might imagine."). As such, we review *Erlinger* errors, like other sentencing-factor errors, for harmless error. *See Johnson*, 114 F.4th at 917 (applying harmless error analysis to *Erlinger* error); *United States v. Santana*, 141 F.4th 847 (7th Cir. 2025) (reviewing unpreserved *Erlinger* error for harmlessness within plain error review).[1]

---

[1] Each of our sister circuits to consider an *Erlinger* error has uniformly reviewed for harmlessness, too. *See United States v. Brown*, 136 F.4th 87, 95 (4th Cir. 2025); *United States v. Butler*, 122 F.4th 584, 589 (5th Cir. 2024); *United States v. Campbell*, 122 F.4th 624, 631 (6th Cir. 2024); *United States v.*

Nor does our analysis change because the court failed to charge the ACCA-related sentencing factor in the indictment. It is "well established in this circuit that *Apprendi* errors in both the indictment and the charge to the jury are subject to harmless error analysis." *United States v. Adkins*, 274 F.3d 444, 454 (7th Cir. 2001); *see also United States v. Nance*, 236 F.3d 820, 825 (7th Cir. 2000) (holding *Apprendi* error not structural because an incomplete indictment is analogous to a jury instruction error, which the Court in *Neder* held we review for harmless error).

Beasley urges that his error rises to the level of a constructive amendment to the indictment, which "is per se reversible error." *United States v. Muresanu*, 951 F.3d 833, 839 (7th Cir. 2020) (quoting *United States v. Galiffa*, 734 F.2d 306, 311 (7th Cir. 1984)). Beasley relies on two cases, *Stirone* and *Muresanu*, in which the trial court constructively altered the indictment by convicting the defendant of an offense not charged in the indictment, which was structural error because it violated the substantial right to be tried only on charges in the grand jury's indictment. *Stirone v. United States*, 361 U.S. 212, 217 (1960); *Muresanu*, 951 F.3d at 839. Both cases, however, involved the subsequent addition of an *entire offense* not charged in the indictment—in *Stirone* the erroneous jury instructions allowed conviction for a separate Hobbs Act violation not charged in the indictment, 361 U.S. at 214, and in *Muresanu*, the indictment charged the defendant with an attempted crime but the jury convicted him for the completed crime because the judge

---

*Xavior-Smith*, 136 F.4th 1136, 1137 (8th Cir. 2025); *United States v. Rivers*, 134 F.4th 1292, 1304–05 (11th Cir. 2025); *United States v. Saunders*, No. 23-6735-cr, 2024 WL 4533359, at *2 (2d Cir. Oct. 21, 2024).

omitted the word "attempt" from the jury instructions, 951 F.3d at 834–835. Here, by contrast, the indictment "fail[ed] to allege . . . *but one element* of the ACCA sentencing enhancement to be decided by the jury." *Brown*, 136 F.4th at 96. Cases involving the addition of new offenses to the indictment, therefore, are not instructive here.

Accordingly, our court has never extended the principles from *Stirone* to cases concerning the failure to charge a sentencing factor, instead consistently reviewing for harmlessness. *See, e.g.*, *Santana*, 141 F.4th at 852 (applying harmless-error review to *Erlinger* error where different-occasions question was neither charged in the indictment nor submitted to the jury); *United States v. Gamez*, 77 F.4th 594, 598 (7th Cir. 2023) (same); *United States v. Mansoori*, 480 F.3d 514, 518, 523 (7th Cir. 2007) (applying harmless error review where indictment failed to charge factor that ultimately mandated a life sentence). Other circuits to consider the issue agree. *Brown*, 136 F.4th 87, 95 (noting, in *Erlinger* context, that "failure to charge" error is not structural error and rejecting argument that sentencing under ACCA without charging ACCA violation constituted constructive amendment of the indictment); *United States v. Robinson*, 367 F.3d 278, 286 (5th Cir. 2004) ("[T]he absence of an indictment on the aggravating factors used to justify a death sentence is not structural error and is susceptible to harmless error review.").

Finally, Beasley argues that harmless error review cannot apply because, absent a jury verdict on the different-occasions question, we have no point of comparison for what a properly instructed jury could have found. He bases this argument on language from *Sullivan* stating that without a "jury verdict of guilty-beyond-a-reasonable-doubt, the question whether the

*same* verdict of guilty-beyond-a-reasonable-doubt would have been rendered absent the constitutional error is utterly meaningless." 508 U.S. at 280. But while "this strand of the reasoning in *Sullivan* does provide support for [Beasley's] position, it cannot be squared with [the Supreme Court's] harmless-error cases." *Neder*, 527 U.S. at 11; *see, e.g., Pope v. Illinois*, 481 U.S. 497, 499–501 (1987). The Supreme Court rejected the same argument in *Neder* and *Recuenco*, both cases in which the jury failed to return a verdict of guilty-beyond-a-reasonable-doubt on the issue in question (an element of the offense in *Neder*; a sentencing factor in *Recuenco*). The Supreme Court's repeated rejection of Beasley's proposed application of the language from *Sullivan* "compels our rejection of this argument here." *Recuenco*, 548 U.S. at 222 n.4. Further, we have applied harmless error to *Apprendi* and *Erlinger* errors even when the defendant pleaded guilty and there was no trial or jury verdict at all. *See Johnson*, 114 F.4th at 917 (reviewing *Erlinger* error for harmlessness after guilty plea).

Beasley attempts to deflect this precedent by again casting his error as a charging error, noting *Recuenco* did not involve analysis of a charging error. But the issue highlighted—that there was no guilty verdict to use as a comparison for harmless-error review—exists whether the sentencing factor was omitted from the indictment, the jury instructions, or both. We are not convinced Beasley has identified a meaningful distinction, so we follow our precedent.

**B. Harmless Error Analysis**

A district court's "failure to submit a sentencing factor to a jury is harmless only if it is 'clear beyond a reasonable doubt' that a properly instructed jury would have found the same facts as the court." *Johnson*, 114 F.4th at 917 (quoting

*Hollingsworth*, 495 F.3d at 806); *see also Chapman*, 386 U.S. at 24.
Here, "[a] properly instructed jury would have considered 'a
range of circumstances,' including timing, proximity of loca-
tion, and the character and relationship of the offenses." *Id.*
(citing *Wooden*, 595 U.S. at 369).

Beasley argues as a threshold matter that the government
cannot meet its burden of showing the error in this case was
harmless because we may not rely on *Shepard* documents,
without which the record contains no evidence regarding the
three predicate convictions' timing, location, or relatedness.[2]
Here, we need not turn to *Shepard* documents because Beasley
conceded in his sentencing memorandum that two of the of-
fenses occurred over a year apart, and during the sentencing
hearing confirmed that the three past convictions at issue
were "an armed robbery on March 21st, 2004; an aggravated
battery on June 11th of [2005]; and [] a homicide on December
23rd of 2011." These concessions alone are sufficient to sup-
port our harmlessness analysis. *See United States v. Robinson*,
964 F.3d 632, 638 (7th Cir. 2020) (finding no plain error where
court based sentence on defendant's admission to drug quan-
tity without submitting that fact to the jury because "[a]n ad-
mission is even better than a jury's finding" (quoting *United
States v. Warneke*, 310 F.3d 542, 550 (7th Cir. 2002))).

---

[2] Beasley raised an even broader challenge at oral argument, arguing
that we may not rely on anything outside the trial record that was before
the jury when we conduct harmless error review. Beasley did not make
this argument prior to oral argument, however, and arguments raised for
the first time at oral argument are waived. *Marvin v. Holcomb*, 72 F.4th 828,
833 (7th Cir. 2023), *cert. denied*, 144 S. Ct. 557 (2024) (citing *Harden v. Marion
Cnty. Sheriff's Dep't*, 799 F.3d 857, 863 (7th Cir. 2015)).

With Beasley's concessions in mind, we consider the *Wooden* factors: "timing, proximity of location, and the character and relationship of the offenses." *Id.* (citing *Wooden*, 595 U.S. at 369). Often, "a single factor—especially of time or place—can decisively differentiate occasions." *Wooden*, 595 U.S. at 370. "When the crimes are separated by a day or more, for example, they will 'nearly always' be treated as different occasions." *Santana*, 141 F.4th at 853 (quoting *Wooden*, 595 U.S. at 370). And we have said following *Wooden* that "no colorable argument" could support treating two robberies as having been committed on the same occasion when they were separated by thirty-six hours. *United States v. Richardson*, 60 F.4th 397, 399 (7th Cir. 2023).

In *Johnson*, we held the *Erlinger* error at issue was not harmless because the offenses occurred "within minutes" and less than a mile of each other. 114 F.4th at 917. Similarly, in *Santana*, we held the jury could have reasonable doubt the crimes were committed on different occasions where the defendant committed them four miles and ten minutes apart. In contrast, courts have found *Erlinger* errors harmless where substantial gaps in time and distance separated the offenses and the nature of the crimes differed. *See, e.g.*, *Brown*, 136 F.4th at 98–99 (robberies separated by two months); *Butler*, 122 F.4th at 590 (four drug crimes committed months to years apart involving different buyers and different drugs); *Campbell*, 122 F.4th at 632 (three drug crimes committed months and hundreds of miles apart, involving different drugs).

This is the kind of case where the "single factor . . . of time . . . decisively differentiate[s] occasions." *Wooden*, 595 U.S. at 370. The record shows Beasley committed each offense over a year apart (in 2004, 2005, and 2011), far beyond the thirty-six-

hour limit we described in *Richardson*. 60 F.4th at 399. We can think of "no colorable argument" for treating offenses separated by over a year as having been committed on the same occasion. *Id.* Further, the offenses differed in nature: an armed robbery, an aggravated battery, and a homicide. It is clear beyond a reasonable doubt that a properly instructed jury would have found that Beasley committed the three offenses on different occasions.

One final note. Beasley argues the district court's error cannot be harmless because remanding to the district court to allow the government to properly charge and prove the ACCA enhancement would violate double jeopardy principles. Regardless of whether Beasley is correct that double jeopardy would bar subsequent proceedings on the different-occasions question, his argument does not show the district court's error was harmful. It has nothing to do with our inquiry, which is whether it is clear a properly instructed jury would have found beyond a reasonable doubt the offenses occurred on separate occasions. In any event, we are not remanding in this case because the district court's *Erlinger* error was harmless, so our decision does not implicate Beasley's double jeopardy concerns.

\*      \*      \*

We review for harmless error a district court's failure to charge ACCA's different-occasions factor in the indictment or submit it to the jury. The error here was harmless.

The judgment of the district court is

AFFIRMED.